UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 1:23-24431-CIV-DAMIAN/Louis

MALIK HUGHES-JACKSON and
MICHAEL HUGHES-JACKSON,

    Plaintiffs,

vs.

CARNIVAL CORPORATION,
d/b/a Carnival Cruise Lines,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW**

    The Plaintiffs, MICHAEL HUGHES-JACKSON and MALIK HUGHES-JACKSON, pursuant to Federal Rules of Civil Procedure 37(d)(1)(A)(i) and 37(d)(3), moves for sanctions to be imposed against the Defendant, CARNIVAL CORPORATION, and in support thereof states as follows:

**INTRODUCTION**

    This matter arises out of injuries sustained while Plaintiffs, MICHAEL HUGHES-JACKSON and MALIK HUGHES-JACKSON, were passengers aboard the Defendant's Cruise Ship, the Carnival "Horizon." On November 25, 2022, the two Plaintiffs were severely beaten by four attackers after Carnival security and crew members observed physical aggression, heard verbal threats, yet failed to report the incidents, separate the parties, or take other actions consistent with their security manual.

1

As described in detail below, to date, the Defendant has deliberately and egregiously frustrated the discovery process in this case, part of an unfortunate pattern of conduct by this litigant. On October 10th of this year Defendant Carnival produced a designed corporate representative for deposition in this case pursuant to Federal Rule of Civil Procedure 30(b)(6). Despite having over a month and a half to designate and prepare its 30(b)(6) corporate representative for deposition, Carnival failed to conduct even the most basic preparation; its designee proved completely unable to provide any substantive testimony on many of the designated areas of inquiry. Carnival compounded the prejudice in frustrating meaningful rule 30(b)(6) discovery by refusing to produce multiple individual crewmember witnesses for deposition, and in one instance, refusing to even identify a crewmember.

## **DEFENDANT'S MISCONDUCT**

On August 21, 2024, the Plaintiff sent the Defendant a list of topics for a corporate representative deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) and requested available deposition dates. (Exhibit 1). Plaintiff followed-up for deposition dates August 23, 2024, and September 4, 2024. On September 12, 2024, the Plaintiff noticed the deposition for September 17, 2024.[1] (Exhibit 2).  Four days prior to the scheduled deposition, Defendant's counsel emailed that the 17th "no longer worked" and that new dates would provide as soon as possible, possibly the same day. (Exhibit 6).

Nearly three weeks later, October 2, 2024, Defendant proposed October 10th or the following week, which fell outside the extended discovery deadline, for the corporate representative. (Exhibit 5).  Defendant, for the first time, also indicated they would designate

---

[1] A discovery extension was sought, in part, because Carnival could propose dates after the discovery deadline

multiple representatives.[2] While Defendant initially suggested both representatives would be available October 10, this proved inaccurate. After Plaintiff confirmed October 11, Defendant asked if Plaintiff could depose their second corporate representative October 12, which conflicted with Plaintiff's existing obligations. On October 7, Defendant sent Plaintiff a highlighted version of the deposition notice, identifying the topics their first corporate representative would be prepared to testify about, including "cross-over" designations. Plaintiff promptly served a corresponding notice of deposition. (Exhibit 7). The day before the deposition, the Defendant, for the first time, emailed plaintiff with a host of objections. (Exhibit 3). At this point, the only dates available for Defendant's second representative are outside of the extended discovery deadline.

The deposition of the first corporate representative, John Butchko, proceeded. Unfortunately, the corporate representative was completely unprepared to testify substantively regarding many of the materials for which he was solely designated.

*Training of Security and Crew (Section II(g) and II (h) of Plaintiff's NOD)*

When asked the most basic questions regarding training provided for security and crew members, Carnival could only provide general, non-specific answers. (Exhibit 4 page 59 23-25; page 60 lines 1-9; 107 line 25; page 108 lines 1-6; page 109 lines 20-25; page 110 lines 1-6)[3]. Carnival could not answer whether crew members received training on the conduct policy applicable to passengers. (Exhibit 4 page 59 23-25; page 60 lines 1-9). Carnival likewise could not answer whether security officers received training regarding proper handling of verbal threats. (Exhibit 4 page 107 line 25, page 108 line 1-6). Carnival could not answer whether

---

[2] To prevent the very issue subject of this motion, Plaintiff requested the name of the corporate representatives and for Defendant to identify which topics each representative would testify regarding.
[3] Only a rough copy of the deposition transcript is available as the deposition occurred yesterday

the training given to crewmembers discussed the basketball court. (Exhibit 4 page 109 lines 24-25, page 110 lines 1-6). Carnival also could not say when the last time security officers received the trainings required by their security manual. (Exhibit 4 page 29 lines 2-11).

*Ship Security Plan (SSP) (Section II(b) of Plaintiff's NOD)*

Carnival never reviewed the Ship Security Plan ("SSP") in place for the Carnival Horizon at the time of the subject incident. (Exhibit 4 page 10 lines 13-15). Carnival could not answer whether the SSP for the Carnival Horizon contained an introduction or preamble section. (Exhibit 4 page 11 lines 12-16). Likewise, Carnival could not say whether the SSP for the Carnival Horizon contained a company statement, identified high-risk areas the ship, contained provisions regarding the use of surveillance cameras, or outlined necessary training, drills and exercises. (Exhibit 4 page 11 lines 17-22, page 12 lines 6-25).

*Policies and Procedures (Section II(a) and II(e) of plaintiffs NOD)*

Carnival repeatedly testified they did not know whether certain policies existed or, if they did exist, their substance. While signs are allegedly posted the basketball court, Carnival could not say where they are posted or whether the contained rules regarding acceptable conduct on the court. (Exhibit 4 page 35 lines 1-8). Likewise, while Carnival could identify a passenger conduct policy in the ticket agreement, they were unfamiliar with the wording, could not identify prohibited conduct, and did not bring a copy to the deposition. (Exhibit 4 page 30 lines 1-17). Carnival could not answer whether any policies existed, aside from the Carnival Security Manual, to prevent passengers from getting assaulted on the cruise ships. (Exhibit 4 page 29 lines 17-21). Carnival could not answer whether any policies existed, aside from the security manual, to prevent crime aboard the ship. (Exhibit 4 page 29 lines 22-25). While Carnival testified a policy existed for the preservation of video following an incident,

4

they could not provide the name of the policy or the citation for the policy or testify to its contents. (Exhibit 4 page 31 lines 11-25, page 32 lines 1-5). Lastly, Carnival could not definitively answer whether any policy existed which required a meeting following a security incident. (Exhibit 4 page 108 lines 24-25, page 109 lines 1-25).

*Knowledge of All Liability Evidence & All Facts and Information Known by All Persons (Section I(a) & Section I(h) of Plaintiff's NOD)*

It was apparent during deposition that no Carnival crewmembers or security personnel were contacted or consulted in preparation for the deposition. No one spoke with the crewmember, Flavio Bukri, who Carnival apparently supervised the basketball court at the time of the incident and who allegedly intervened during one conflict between the four attackers and the plaintiffs. (Exhibit 4 page 70 lines 4-9). Carnival could not say why this crewmember arrived at the basketball court, what his duties were at the time, or what he allegedly said to the parties. (Exhibit 4 page 83 lines 5-10, page 74 lines 4-10). While Carnival suggested that the chief security officer or staff captain may be able to address these questions, they clearly were not consulted in preparation for this deposition. (Exhibit 4 page 74 lines 14-15).

Another Carnival crewmember present during numerous confrontations at the basketball court between the 4 attackers and plaintiffs was not identified. (Exhibit 4 page 69 lines 9-22). A security guard, who visibly stopped and turned in the direction of Plaintiffs as they were pursued by their future attackers through the ship, was never contacted or interviewed. (Exhibit 4 page 77 lines 4-12). Carnival could not identify what caught his attention. (Exhibit 4 page 77 lines 24-25).

The only items reviewed by Carnival in preparation for this deposition were two reports, one of which was prepared by the testifying representative. (Exhibit 4 page 5 lines 8-11). Carnival did not review the security schedule applicable to this incident nor could they explain its contents. (Exhibit 4 page 42 lines 11-19). Carnival could not identify from the security schedule which security officer, if any, was assigned to patrol the basketball court area. (Exhibit 4 page 43 lines 9-25, page 45 lines 1-25, page 46 lines 1-18). Carnival never even confirmed whether a security guard periodically patrolled the basketball court on the date of incident, as recommended by the Carnival Security Manual. (Exhibit 4 page 75 lines 5-11 & 21-25). Perhaps obviously, none of the security officer(s) tasked with patrolling the basketball area were interviewed. (Exhibit 4 page 75 lines 12-17). Likewise, none of the four security officers tasked with patrolling the main pool area, an area through which the Plaintiffs were pursued and located directly outside the area where the Plaintiffs were attacked, were interviewed. (Exhibit 4 page 76 lines 17-21).

*Reporting of the Subject Incident to the FBI and Other Authorities (Section I(v) of Plaintiffs' NOD)*

Carnival could not identify which materials, if any, were provided to the Miami-Dade Police Department. (Exhibit 4 page 34 lines 3-25).

The designated representative's lack of understanding of all these basic and material issues was clearly a product of his lack of preparation. Worse, Carnival failed to provide any documentation in response to Plaintiffs' Subpoena Duces Tecum, instead either objecting or citing agreements reached regarding previous discovery issues raised regarding Carnival's Request for Production of Documents.  As the case law describes in detail below, Carnival's refusal to designate a witness either prepared or capable of testifying as to the areas as

described above is the equivalent of failing to produce a witness at all and is sanctionable under Federal Rule of Civil Procedure 37(d)(3).

Moreover, Carnival's approach to Rule 30(b)(6) deposition is not an isolated incident but rather reflects a pattern of abuse consistent with Carnival's tactics in other cases. For example, in *Nelson v. Carnival Corporation,* S.D. Fla. Case No. 18-CV-23293-MORENO, *Hannah Kartagener v. Carnival Corporation*, S.D. Fla Case No. 18-20974-JLK, *Maples v. Carnival Corporation*, 17-20130-JEM, and Walley v. Carnival Corporation, 17-20076-RNS, Carnival, as here, arrived at the corporate representative deposition without a designee to testify to all the areas of inquiry, requiring a second sitting, months later, at the Plaintiff's further expense.

For example, in the *Nelson* matter, as here, the Notice of Deposition was provided to the Defendant months in advance. Additionally, Plaintiff reached out to Defendant's counsel beforehand to identity of the witness and confirm which of the noticed topics the representative would be prepared to testify on. Identical to Defendant's actions in this matter, objections were raised, both to the areas of inquiry and to the documents requested in the attached duces tecum, for the first time *the day prior to the scheduled deposition*. This Court determined that these objections were insufficient in both timing and content to relieve Defendant of the obligation to show up the next day with a prepared witness. The Court ultimately disregarded Defendant's untimely objections, compelled Defendant to produce a prepared witness and to provide the documents requested by Plaintiff.

This is not the first time this court has sanctioned and warned Carnival about discovery abuse violations, including violations of Rule 30(b)(6). In *Villeta v. Carnival Corporation*, 13-24369-CMA, Judge Altonaga of this Circuit sanctioned Carnival under Rule 37 for failing to produce a prepared 30(b)(6) corporate representative and for providing misleading answers to

7

interrogatories (See Exhibit 8). In her 6 page written order, Judge Altonaga specifically warned Carnival about discovery abuse violations and that the Sanctions Order would "serve the underlying policies of Rule 37, among them 'deterring others from engaging in similar conduct' and 'penalizing the guilty party' (citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985). At the hearing in front of Magistrate O'Sullivan of this District that preceded Judge Altonaga's Order, Magistrate O'Sullivan, after noting that 30(b)(6) representatives "are supposed to be educated" about basic case facts, stated:

> "Carnival has got to take this stuff a little more seriously. You know, if they want to say 'yeah, you know, we will give him a couple of reports or we won't give any reports. If they push hard, we will give them another one, and then if they really push hard, we will actually ask everybody whether they have a, report…"

As discussed below, this pattern of abuse and deliberate attempt to stall, delay, and deny Plaintiffs the ability to obtain even the most basic discovery warrants sanctions.

## MEMORANDUM OF LAW

Rule 30(b)(6) is "designed to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006). The corporate deponent must therefore "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought ... and to prepare those persons in order that they can answer fully, completely unevasively, the questions posed ... as to the relevant subject matters." *Brazos*, 469 F.3d at 433, quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997); *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992); *Mitsui & Co. (U.S.A.) v. Puerto Rico Water Resources Authority*, 93 F.R.D.

62, 67 (D.P.R. 1981)(emphasis in Brazos); see *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 699 (S.D. Fla. 1999)(corporate Rule 30(b)(6) deponent must "designate persons who have knowledge of the matters sought" and "prepare those persons so that they are able to give complete and knowledgeable answers.").

Corporations have an "affirmative duty" to make available the witnesses "necessary to give 'complete, knowledgeable and binding answers'" on their behalf. *Ecclesiastes 9:10-11-12, Inc, v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007), quoting *Morelli*, 143 F.R.D. at 45. While Rule 30(b)(6) "is not designed to be a memory contest," the corporation's designated deponent "must both be knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization." *Meridien*, 171 F.R.D. at 150. The corporation accordingly has a duty to prepare the designated deponent to testify "to the extent matters are reasonably available, whether from documents, past employees, or other sources"; the corporation's duty to prepare the witness "goes beyond matters personally known to that designee or ... matters in which that designee was personally involved." *Brazos*, 469 F.3d at 433. Having a representative personally knowledgeable about some or all of the deposition topics may be convenient for the corporate deponent and make the preparation process more efficient, but is not essential, and the unavailability of such a witness does not relieve the corporate deponent of its obligation to prepare the deponent thoroughly on the basis of corporate records and collective corporate knowledge of the material facts.

The law is also well-established that a Rule 30(b)(6) deponent has "an affirmative obligation to educate himself as to the matters regarding the corporation"; the rule "explicitly requires" a corporate deponent to have its designated witness or witnesses "testify on its behalf as to all matters known or reasonably available to it" and hence "implicitly requires" the

designated witness preparing for the deposition "to review all matters known or reasonably available to" the corporate deponent. *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001).

In the present matter, Carnival reviewed two documents in preparation for their deposition. The witness did not review witness statements, the security schedule, the Ship Security Manual, the Ship Security Plan, the Ship Management System, or any other documents. It was apparent they failed to speak with any of the crew members or security personnel involved. Predictably, given this lack of preparation, he remained completely unable to testify regarding the designed areas of inquiry or explain even the most basic material facts about the events surrounding Plaintiffs' injury or the security operations that were designed to prevent it.

Compounding Carnival's obfuscation, they now attempt to schedule the deposition of their second representative after the extended discovery cutoff.[4] Carnival has failed to provide numerous internal documents that refer or relate to the incident, as described above.

Rule 37(d)(1)(A)(i) authorizes sanctions for a failure to appear for a Rule 30(b)(6) deposition. Federal courts deem a failure to prepare a Rule 30(b)(6) witness adequately to testify responsively and substantively regarding the designated topics to be equivalent to a failure to produce a 30(b)(6) witness at all. See *Calzaturficio*, 201 F.R.D. at 39, citing *Starlight International v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999)("Producing an unprepared [30(b)(6)] witness is tantamount to a failure to appear at a deposition."); *Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.,* 228 F.3d 275, 304 (3d Cir. 2000)(when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "producing an

---

[4] Carnival provided October 11, 2024

10

unprepared witness is tantamount to a failure to appear" for purposes of ordering sanctions under Rule 37(d)); citing *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D. N.C. 1996); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 198 (5th Cir. 1993)(upholding an award of fees and costs under Rule 37(d)); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989)("An inadequate Rule 30(b)(6)designation amounts to a refusal or failure to answer a deposition question."); *Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 487, 489-90 (D. Md. 2005)(sanctions appropriate where the 30(b)(6) witness was not prepared to discuss the topics listed on the notice and had not even seen the notice prior to the deposition); cf. Fed. R. Civ. Pro. 37(a)(4) (for purposes of companion rule 37(a), "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer or respond.").

Available sanctions under Rule 37(d)(3) include striking pleadings in whole or in part, directing those designated facts be taken as established for purposes of the action, or requiring the party at fault to pay the reasonable expenses caused by the failure. In this case, the complete and utter failure of Carnival to produce an adequately prepared 30(b)(6) representative, compounded by its other failures to provide complete discovery responses and refusal to produce the crewmembers involved, multiple attempts to schedule deposition outside of the discovery window, has served to block the Hughes-Jackson brothers from obtaining meaningful discovery into the facts and circumstances surrounding this incident, and information he needs to prove liability on the part of Carnival.

The 30(b)(6) deposition is designed to streamline the discovery process and provide a basic understanding of who the relevant witnesses within the corporation are and what knowledge they possess. When a corporate entity fails to comply in such basic ways, an

11

opposing litigant must incur the expense of deposing numerous witnesses to obtain the knowledge the corporate representative should have at his or her fingertips if properly prepared.

Under the current scheduling order, Plaintiffs' lack time to conduct complete discovery even if Carnival were compelled to produce all witnesses and information promptly. Accordingly, this Court, as a sanction under Rule 37(b)(2)(A)(i-iii), available to the Court under this procedural scenario through Rule 37(d)(3), should strike the Defendant's pleadings and find that liability is established. Alternatively, this Court should grant Plaintiff additional time to depose Carnival's second corporate representative, compel Defendant to produce a prepared representative to address the remaining areas of inquiry, and preclude Defendant from introducing evidence that contradicts the unprepared testimony of their first corporate representative.

WHEREFORE, the Plaintiff requests entry of an order striking the Defendant's pleadings and establishing Defendant's liability. Alternatively, Plaintiff requests an order granting additional time to depose Carnival's second corporate representative, compelling Defendant to produce a prepared representative to address the remaining areas of inquiry and precluding Defendant from presenting any evidence that contradicts the unprepared testimony of their first corporate representative.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served **October 11 2024**, upon all counsel on the Service List below via email and/or another means in accordance with the Federal Rules of Procedure.

By: */s/ Thomas Scolaro*
Thomas Scolaro, Esquire
Florida Bar No.: 178276

Maxwell Malvin, Esquire
Florida Bar No.: 1052013
1728 Coral Way, Suite 702
Miami, FL 33145
Telephone: 305-424-2300
Facsimile: (305) 424-2140
scolaro@USinjury.law
max@usinjury.law
barbie@USinjury.law
*Attorneys for Plaintiff*

**SERVICE LIST**
*Hughes-Jackson v. Carnival Corp*.
**Case No.: 1:23-cv-24431-DAMIAN/Louis**

| | |
|---|---|
| Thomas Scolaro, Esquire<br>Florida Bar No.: 178276<br>Maxwell Malvin, Esquire<br>Florida Bar No.: 1052013<br>**SCOLARO LW, P.A.**<br>1728 Coral Way<br>Suite 702<br>Miami, FL 33145<br>Telephone: (305) 424-2300<br>Facsimile: (305) 424-2140<br>tom@usinjury.law<br>ana@usinjury.law<br>barbie@usinjury.law<br>*Attorneys for Plaintiff* | Thomas Dennis Alan Briggs, Esquire<br>Florida Bar No.: 0663034<br>Lauren N. Cabeza<br>Florida Bar No.1025668<br>**MASE MEBANE SEITZ**<br>2601 South Bayshore Drive<br>Suite 800<br>Miami, FL 33133<br>Tel: 305-377-3770<br>tbriggs@maselaw.com<br>lcabeza@maselaw.com<br>filing@maselaw.com<br>pmoghari@maselaw.com<br>hmedina@maselaw.com<br>jweimer@maselaw.com<br>kjones@maselaw.com<br>lcabeza@maselaw.com<br>*Attorneys for Defendant* |
| Michael C. Black, Esquire<br>Florida Bar No.: 0056162<br>**MICHAEL C. BLACK, P.A.**<br>Dadeland Square at the Greenery Mall<br>7700 N. Kendall Drive, Suite 305<br>Miami, FL 33156<br>Telephone: (305) 271-8301<br>Facsimile: (305) 271-8302<br>mblack@marlaw.com<br>jcarbajal@marlaw.com<br>*Co-Counsel for Plaintiff* | |